# WHEELING

Pickens v. McCoy.

Submitted January 28, 1884—Decided May 3, 1884.

(*Woods, Judge, Absent.)

1. Where there is a conflict of evidence, and it is so nearly balanced as to make it doubtful on which side is the preponderance, an issue ought to be directed; but when, though there be a conflict, it is not of such character, no issue should be ordered. The conflict of evidence must be regarded as of this character and as justifying the direction of an issue by the circuit court, whenever on appeal the Appellate Court is so divided in opinion as to the weight of the evidence, that one or more of the judges thinks the issue ought not to have been ordered, because the evidence established clearly a certain state of facts, while the other judge or judges think the issue ought not to have been directed, because in his or their opinion the evidence establishes an opposite state of facts. This marked diversity of opinion as to the weight of the evidence is itself sufficient to show that it is doubtful on which side is the preponderance. In such case therefore the order of the circuit court directing the issue cannot be reversed but must be affirmed. (p 352.)

2. The third and fourth points of the syllabus in *Shipman* v. *Bailey*, 20 W. Va. 140, re-asserted.

3. Where a bond by its terms bears interest at *three per cent. per annum* from date, a decree for the payment thereof should be for the aggregate sum due, the interest being computed at the rate of *three per cent.* to the date of the decree, and then the decree should provide for the payment of interest thereon at the rate of *three per cent.* until paid. A decree providing for interest at *six per cent.* on such aggregate sum is erroneous. (p. 353.)

4. Where one is compelled to pay a bond the second time, having wrongfully after notice paid it to a holder, who had no right to it, a decree in his favor against his co-defendant, to whom he had so improperly paid it, should be for the sum he had so paid with interest, although it might be much less than the face of the bond and interest thereon. (p. 353.)

Johnson, President, furnishes the following statement of the case:

*Counsel below.

In September, 1869, Alexander Pickens filed his bill in the circuit court of Barbour county against Benjamin McCoy, Oliver P. Bowers and Noah E. Warder. He represented that on the 11th day of March, 1868, McCoy executed to him his obligation for one thousand dollars, payable on the 1st day of March, 1869, with interest at three *per cent. per annum* from the 11th day of March, 1868, to the 1st day of March, 1869, and then six *per cent.* until paid; that a short time before said obligation became due, the same was surreptitiously taken from plaintiff or stolen, as he believes, by said Bowers and Warder; that said Bowers was living in the house with said Warder and was keeping a little "low flung" liquor-shop near Philippi contrary to law, in which said Warder habitually stayed; that plaintiff happened at said liquor-shop and believes that while he was there he was drugged, "or put under the potent influence of bad whisky" by the said Bowers and Warder for the wicked, corrupt and fraudulent purpose of robbing him of certain valuable papers it was known belonged to him, and of which he was then in possession, among which was the said one thousand dollar bond; and while he was in this unconscious condition, or while he was asleep in said "doggery," the said obligation with other papers of value were abstracted from him; that plaintiff remained in said "doggery" for two or three days and nights, and returned to his boarding-house in Georgetown in a very bad state of health, and was confined to his bed for two or three weeks under medical treatment; that at the beginning of his said sickness he discovered that said one thousand dollar obligation was gone, and upon inquiry found that it was in the possession of the said Bowers; and suspecting the fraudulent purpose of said Bowers, he immediately notified the said McCoy of the facts, and that he should not pay the same to said Bowers or Warder, or any other person; that said McCoy now claims that he has paid said bond to Bowers. He charges that if he had so paid it, he paid it after he had been notified of the facts in the case, with full and perfect knowledge of the rights of the plaintiff and the crime and fraud of the said Bowers and Warder. He charges that the whole scheme of robbery was concocted by all the said defendants, and the robbery was the result of

their joint machinations, and that the profits of their crime was divided between them by said McCoy paying to said Bowers and Warder about one half of what was due upon said bond; that "said McCoy is in affluent circumstances,. and said Bowers and Warder are bankrupts and are men of unrestrained characters." The prayer of the bill is "that the court may render a decree against the said defendants for the one thousand dollars aforesaid and the interest due thereon. If it shall be contended by the said defendants that they came honestly by the. said obligation, let them state in their answers and prove how they came by it, and what consideration they paid, and grant unto your orator such other, further and general relief as the court may see fit to grant."

The plaintiff filed an amended bill, in which he says, that at the beginning of his. sickness he discovered that the one thousand dollar bond was gone, and on enquiry found that it was in the possession of said Bowers, "and suspecting the fraudulent purpose of said Bowers, he immediately caused a written notice to be served upon said McCoy, notifying him of the robbery aforesaid, also not to pay said note to said Bowers and Warder or either of them; that said McCoy now claims, that he has paid off said note to said Bowers, and that the same is in his own possession. The plaintiff charges, that, if said McCoy has paid off said note to said Bowers and Warder, or either of them, the payment was made long after he received the written notice aforesaid, and that said payment was therefore fraudulent, because it was made with full knowledge of the plaintiff's rights in the premises and also of the crime and fraud of the said Bowers and Warder. He further charges that said McCoy was a party to said robbery and participated in the profits of the detestable crime; that said McCoy is a man of means, and that said Bowers and Warder were both bankrupts, and men of unrestrained characters." The prayer is the same as in the original bill with the further prayer, "that if said McCoy has paid off said note, as he says he has, he may be compelled to file the same with his answer to this bill." The amended bill has but little in it that was not in the original bill.

Benjamin McCoy answered the bill and amended bill,

denying all knowledge of how Bowers obtained said note, and averring that Pickens and Bowers together kept the place where liquor was sold, and that Pickens brought Bowers to Philippi for the express purpose of taking possession of a hotel claimed by Pickens, and of keeping the said hotel for their joint benefit; that of his own knowledge he knows but little concerning the circumstances of Bowers before or after coming here, but he has been informed and avers, that he was the owner of considerable property, which he sold, and for which he held obligations or notes amounting to six hundred dollars or seven hundred dollars, which he assigned to Pickens; that complainant is an unmarried man and has no home of his own; that respondent is informed and believes that the said assignment of the one thousand dollar note was in consideration of the assignment to him by Bowers of the said six hundred dollar or seven hundred dollar notes, and the further consideration that Bowers was to board him in his family; that, so far as respondent can learn, said Warder had nothing to do with the arrangement but witnessed the assignment of the one thousand dollar note. He denies all fraud and unfair dealing and admits that after plaintiff had fallen out with said Bowers and repented that he had made the assignment, of which he had been notified by assignee, he did send him notice not to pay said note to Bowers, and claimed that the note was his; but as Pickens neglected and failed to take any legal steps to arrest the payment of said note or to claim the proceeds or to arrest said Bowers and Warder for the alleged fraud, respondent after waiting a month paid off said note to said Bowers, as he lawfully might; that Bowers and Warder both continued in and near Philippi until long afterwards, and plaintiff never attempted to arrest them for the alleged fraud and robbery, as he ought to have done, if his statement is true; that since that time and as late as the April term 1870 of the circuit court of Barbour county the said Warder attended court as a witness coming from Indiana for the purpose and remained in the county for ten days and departed unmolested; that the said Bowers also remained for several months in the county of Barbour and has lived ever since in Ritchie county in this State unmolested, so that respondent

feels no hesitation in averring that the allegations of said Pickens, that said note was fraudulently or surreptitiously obtained by Bowers and Warder or either of them is wholly false. He prays to be hence dismissed, &c.

On October 19, 1872, a rule was awarded against the defendant, McCoy, to show cause why he should not be attached for failing to file with the papers of the cause the note from himself to Pickens for one thousand dollars, which he claims to have paid to Bowers. He appeared to said rule and filed his answer, in which he says he was under the impression, that he had given said note to his counsel, and that it had been filed with his answer, but has since learned that he was mistaken; that he thinks said note must be among his papers, and that he will be able to find and produce it; that he has made search for it, but has not been as yet able to find it; that he has always regarded said paper as material evidence for himself on the hearing of the cause and asks further reasonable time to make further search for it. The answer is sworn to. On this answer the rule was discharged; and no further order was made in the cause or notice taken as to the non-production of the said paper.

Bowers filed his answer, in which he says that for several years before the year 1868 he resided in Ritchie and Calhoun counties, and was employed in working about the oil-wells; that during the summer or fall of 1868, at the instance and solicitation of Alexander Pickens, he consented to come and live in Barbour county with the intention and purpose of keeping a tavern in the village of Georgetown, near Philippi, in a tavern house then claimed by Pickens as his own, which was occupied by his tenant Elisha Finley; that in compliance with this request he removed his family to Georgetown, but was unable to commence "tavern keeping" because said tenant refused to vacate the property until the spring of 1869. Having no place to live he rented of Noah E. Warder a part of his dwelling-house and store-house on his farm about one mile west of Philippi, known as the old "Henson L. Hoff farm." Alexander Pickens sometime during that winter purchased on his own account a small lot of liquors and placed them in said store-house with respondent's consent with the

intention of removing them to said tavern-house when he and respondent should get possession thereof.

The said Pickens being an unmarried man generally made his home with said Finley, and had done so for several years, and it was agreed between said Pickens and respondent, that the said tavern should be kept on their joint account, and said Pickens should live there.and make his home with him, and out of his interest in the proceeds account for his own living and the service rendered him.    When respondent came to Barbour county he brought with him notes and claims on certain parties, who lived about the oil wells, amounting to about the sum of six hundred dollars, or seven hundred dollars; he also had a horse, which was sold to one Samuel Haddix, in Barbour county, for $———, for which respondent held his note. The said Pickens had or pretended to have many claims on persons for money due him, and among them an obligation of Benjamin McCoy for one thousand dollars, dated March 11, 1868, and payable on March 1, 1869, with interest at the rate of *three per cent. per annum* until paid; that during the winter of 1868 and 1869 said Pickens and respondent entered into an agreement to the effect, that respondent should assign and transfer to Pickens said claims on men about the oil-wells and the note of Haddix for the price of the horse; that Pickens should live with the family of respondent for two years; that in consideration thereof Pickens was to assign to respondent the said obligation of McCoy; that at the end of said two years they were to settle their accounts, and if at that time respondent should be found indebted to Pickens he was to pay him and if Pickens was indebted he should pay.    The said agreement as far as possible was consummated at that time for respondent in pursuance thereof assigned to Pickens said claims on said parties about the oil-wells and the claim on Haddix, and the said Pickens on his part assigned and delivered to respondent said obligation of McCoy, which assignment was attested by Noah E. Warder as a subscribing witness.    Respondent collected and received the money on said note from said McCoy and surrendered to him the note.    Warder had no interest whatever in the liquor kept as aforesaid or in the said note or money.

Respondent continued to live in Barbour county for several months after it was known to Pickens that he had collected the money on said note, and he made no complaint to respondent, nor did he ever arrest, or threaten to arrest him for the pretended robbery. He denies all fraud or unfair dealing as charged in the bill, and especially does he deny, that he or any one for him robbed said Pickens of said note. He denies, that he drugged said Pickens or induced him to drink, and denies every charge in the bill with reference thereto. He asserts that said Pickens never returned or surrendered to this respondent the claims which he received, nor has he offered to do so, but still retains the same.

Warder also answered the bill. In his answer he says, that Bowers and plaintiff were about to engage in the business of keeping a grocery for the sale of groceries and liquors, and a small lot of liquors had been purchased by plaintiff and was then on hand in the grocery. Respondent had no interest in the business. He denies, that he had anything whatever to do with the arrangement, by which Pickens parted with the note on McCoy, but says that he was called upon by both plaintiff and Bowers to witness the assignment of the note to Bowers, which he did. He denies, that he ever at any time caused plaintiff to become drunk in order to obtain said obligation. He also denies that complainant, when he made said assignment, was under the influence of liquor more than he usually is or that his capacity to transact business was at all diminished by any unusual or excessive dissipation. He denies every allegation of the bill alleging or tending to allege, that he stole or surreptitiously obtained said note or any other paper from the complainant. He denies, that he ever claimed or received from his co-defendants, or either of them, any portion of the money collected on said bond from McCoy. Respondent knows, that Pickens assigned said bond to Bowers. He cannot with certainty state all the consideration for said assignment, but he knows that Bowers transferred obligations held by him on various persons amounting to over six hundred and sixty-two dollars including interest; that said plaintiff was to live with Bowers in his family for two years from April 1, 1869, and that they

were then to settle and the one found in debt was to pay the other. Respondent continued to reside at Philippi until August, 1869, when he removed to Indiana, where he now resides. The first time he ever heard that plaintiff charged him with wrong he heard from the bill of plaintiff. He denies all fraud and dishonesty charged against him.

Numerous depositions were taken in the cause.

On November 18,.1875, upon a hearing, as the proofs then stood, the court directed an issue out of chancery to ascertain, "whether the note or single bill for one thousand dollars executed by defendant, McCoy, to the plaintiff in the bills of the plaintiff mentioned, has been by the said plaintiffs sold, assigned or transferred to defendant, Bowers." This issue was tried on the 14th day of February, 1878, and the jury rendered a verdict, "that said note had not been sold, assigned or transferred to said Bowers by Pickens." On February 28, 1878, the court upon said verdict decreed, that Benjamin McCoy do pay to the plaintiff the sum of one thousand two hundred and ninety-nine dollars and sixteen and two third cents, that being the aggregate of the debt and interest due upon the single bill or note in the plaintiff's bill mentioned with interest at the rate of six *per cent. per annum*, until paid," and that the defendants pay the costs. On March 1, 1878, the court rendered a decree for the same amount in favor of McCoy against the defendant, Bowers.

The defendant, McCoy, appealed from the decree of February 28, 1878.

*Frank Woods* for appellant.

*T. A. Bradford* for appellee.

JOHNSON, PRESIDENT:

I wrote an extended review of the evidence and pleadings and came to the conclusion, that at the time the issue was ordered, the evidence was not so conflicting as to make it doubtful on which side was the preponderance; but I was and am still of opinion, that the evidence at that time clearly preponderated in favor of the defendants. My brother, Green, disagreed with me, and by a long opinion demonstra-

ted, as he thinks, that no issue ought to have been ordered, because the evidence clearly preponderated in favor of the plaintiff. We do not file the analysis of the evidence made by either brother Green or myself, it being wholly unnecessary to do so. Brother Snyder expresses no opinion as to the weight of the evidence, as under the decision of this Court in *Van Gilder* v. *Hoffman*, 22 W. Va. 1, it was not necessary. In that case we held, that where there is a conflict of evidence and it is so nearly balanced as to make it doubtful on which side is the preponderance, an issue ought to be directed; but when, though there be a conflict, it is not of such character, no issue ought to be ordered. The conflict of the evidence must be regarded as of this character, and as justifying the direction by the circuit court of an issue, whenever on appeal the Appellate Court is so divided in opinion as to the weight of the evidence, that one or more of the judges think, that the issue ought not to have been directed, because the evidence establishes clearly one state of facts, while the other judge or judges think the evidence establishes an opposite state of facts. This marked diversity of opinion as to the weight of evidence is itself sufficient to show, that it is doubtful on which side is the preponderance, and therefore in such case the order of the circuit court directing the issue ought not to be reversed. That decision we approve, and therefore we must affirm the decree directing the issue in this cause. There were no exceptions taken to the rulings of the court in the trial of the issue.

Did the court err in requiring the aggregate sum of one thousand two hundred and ninety-nine dollars and sixteen and two thirds cents to bear interest at *six per centum per annum* until paid? The record shows that the one thousand dollar bond bore interest at *three per cent per annum.* The aggregate was made up by calculating the interest on the bond at *three per cent* until the rendition of the decree. In *Shipman* v. *Baily*, 20 W. Va. 140, we held, that in contracts for the payment of money the interest on the principal sum is a legal incident of the debt, and a part of the contract, and where there is a contract for the payment of a specified legal rate of interest, whether such rate is fixed by the contract itself, or by the law of the place where it is made, the obligation

of the contract extends to the payment of such interest as fully as it does to the principal sum, and courts have no more power to change the rate thus fixed than they have to dispense with the enforcement of the contract either in whole or part.

A contract for the payment of interest at the rate of *eight per cent* from date until paid, if such rate is authorized by the law of the place where made, may be computed at such rate to the date of the decree under the provisions of section 16 of chapter 131 of the Code, and the decree for the aggregate sum thus computed will continue to bear interest at this rate. It follows from this, if a bond by its terms bears interest at *three per cent* from date, a decree for the payment thereof should be for the aggregate sum due, the interest being computed at *three per cent* to the date of the decree, and then the decree ought to provide for the payment of interest thereon at the rate of *three per cent* until paid. A decree providing for interest on such aggregate sum at *six per cent* is erroneous. The decree in this case does so provide, and for this reason it is reversed with costs to the appellant. *Brooke* v. *Roane*, 1 Call. 205; *Bent* v. *Patton*, 1 Rand. 25; and this Court proceeding to render such decree as the circuit court ought to have rendered, a decree is here rendered for one thousand two hundred and ninety-nine dollars and sixteen and two third cents, with interest thereon at *three per cent per annum* from the 28th day of February, 1878, until paid, and the plaintiff must recover costs against the defendants in the suit.

The decree of March 1, 1878, is erroneous, because it decrees the same sum in favor of defendant, McCoy, against the defendant, Oliver P. Bowers, when the bill charges, that, "McCoy did not pay more than about one-half to said Bowers and Warder." This charge in the bill is not controverted, and there is no proof on the subject. This decree is also reversed, and this cause is remanded, with leave to the said McCoy to prove in the cause what he did pay said Bowers for said bond; and a decree should be entered for such sum and interest.

Reversed. Remanded.